UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Carol A. Hines,

  **Plaintiff**

v.

Commissioner of Social Security,

  **Defendant**

Case No. 2:10–cv–520

Judge Michael H. Watson
Magistrate Judge Abel

## OPINION AND ORDER

  Plaintiff Carol A. Hines filed this action on June 8, 2010 pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. On June 10, 2011, the Magistrate Judge issued a Report and Recommendation, recommending that the decision of the Commissioner be upheld and that this action be dismissed. ECF No. 20. This matter is now before the Court for *de novo* review pursuant to Plaintiff's timely objections.

  The Report and Recommendation sets forth in detail Hines' medical record and the findings of the Administrative Law Judge ("ALJ"). Plaintiff alleged that she became disabled on July 29, 2004, at age 42, by seizures and diabetes. Her last insured date was June 30, 2010. The ALJ found that she retains the ability to perform light work restricted to simple, unskilled, low-stress tasks. Plaintiff renews five objections to the ALJ's findings: (1) the ALJ improperly ignored the observations of Nurse Practitioner Rutan; (2) the ALJ improperly ignored the opinion of Dr. Jones; (3) the ALJ improperly ignored the opinion of Dr. Hrinko; (4) the ALJ improperly concluded that Plaintiff's diabetes was "stable"; and (5) evidence presented at the hearing establishes that Plaintiff's condition has

deteriorated.

Nurse Rutan. Plaintiff objects that, in making her determination that she retained the residual functional capacity to perform light work, the ALJ improperly ignored evidence from Angela Rutan, a nurse practitioner who treated Plaintiff many times between 2004 and 2008. In addition to keeping medical records of Plaintiff's condition, especially her diabetes, Rutan completed an unfavorable form physical capacity evaluation in 2007 and sent at least one letter to Plaintiff's insurance company in response to a denial of disability benefits opining that "[i]t is poor judgment to consider this lady has any ability to work as a result of both her physical and mental health condition."

The ALJ, however, rejected Ms. Rutan's opinion as to Plaintiff's inability to work as an issue reserved to the Commissioner under 20 C.F.R. § 404.1527(e), found Rutan's conclusions not supported by the weight of the evidence, and noted that a nurse practitioner is not an acceptable medical source under 20 C.F.R. § 404.1513(a). The Magistrate Judge found that the ALJ did not err in failing to give weight to Ms. Rutan's opinion.

On objection, Plaintiff argues that "[h]ad the ALJ considered the evidence presented by Ms. Rutan, he certainly would have had to determine the Plaintiff's impairments were severe enough to justify granting her application for benefits . . . if anyone can offer an informed opinion regarding the severity of Plaintiff's diabetes, Ms. Rutan was the one." Pl.'s Objections to Report and Recommendation 3, ECF No. 23. Plaintiff also argues that the ALJ and Magistrate Judge ignored 20 C.F.R. § 404.1513(d), which specifically provides that nurse practitioners can provide evidence to show the severity of a claimant's impairments and how they impact a claimant's ability to work.

Plaintiff's assertion that the ALJ failed to consider Ms. Rutan's evidence is not supported by the text of her decision. The ALJ specifically noted Ms. Rutan's progress notes, the x-rays she ordered, and her residual functional capacity questionnaire. R. 15. She did not ignore Ms. Rutan's medical evidence, but specifically determined that her opinions were not supported by the evidence of record and that she would not give them controlling weight. R. 20. Furthermore, 20 C.F.R. § 404.1513(d), while it includes nurse practitioners along with naturopaths, educational personnel, and a claimant's friends as persons from whom the Commissioner "may also use" evidence, does not mandate that any weight must be given such evidence. At most, it might be error for an ALJ to completely ignore such evidence if submitted by a claimant, but the ALJ's decision specifically identifies and addresses Rutan's records and opinions. For the ALJ to refuse to give weight to Ms. Rutan's opinions as to Plaintiff's condition and capacity to do work was accordingly not error.

<u>Dr. Daniel Jones</u>. Dr. Jones was a neurologist who treated Plaintiff between August 2004 and September 2008 for hypoglycemic episodes and seizures. In April 2009, he completed a form medical source statement concerning Plaintiff's residual functional capacity, in which he opined that Plaintiff suffered from substantial employment restrictions, such as an inability to sit for more than three hours at a time or six hours total in a workday, and an inability to stand for more than twenty minutes at a time, with regular breaks and rest.[1] In her opinion, the ALJ stated that Dr. Jones had offered no objective

---

[1] Plaintiff asserts that Dr. Jones stated that it was his opinion that she was disabled. The record reflects that Dr. Jones in a January 2007 letter stated, on the subject of Plaintiff's employability, that "we are fairly limited in what we can do", and that his April 2009 capacity assessment was unfavorable. Nevertheless, he does not appear to have ever offered this opinion; nor, of course, could any weight be given to an opinion on a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

support for his conclusions as to Plaintiff's limitations in vocational activities, and that the record was not well supported by the medical record.[2] She accordingly gave "little weight" to his functional capacity assessment. R. 20.

In her Statement of Errors, Plaintiff argued that it was error *per se* for the ALJ to fail to give deference controlling weight to Dr. Jones' opinion, as he was a long-time treating source. The Magistrate Judge, however, determined that under 20 C.F.R. § 1527, treating sources should be given controlling weight only if the Commissioner finds that their opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence". Report and Recommendation 22, ECF No. 20. The ALJ after evaluating the record, concluded that Dr. Jones had failed to provide objective support for his conclusions that Plaintiff was limited to sedentary work, and found his findings at odds with the substantial evidence of record that Plaintiff's seizures were controlled by medication. The Magistrate Judge found that Plaintiff had failed to refute these conclusions.

On objection, Plaintiff reiterates her position that Dr. Jones' opinions were based upon ongoing and sustained treatment and should be given deference:

> Dr. Jones indicates that the Claimant suffers from left temporal lobe seizure disorder with generalized and complex partial seizures. Typical seizure pattern involves confusion followed by loss of consciousness. Seizures may occur up to three times weekly. The seizures are associated with daytime episodes, alteration of awareness, and transient postictal manifestations of unconventional behavior. EEG studies confirm the seizures. Dr. Jones states in his January 29, 2007 office notes that the Claimant should not and cannot drive due to seizures and she cannot work in stressful environments due to

---

[2] The ALJ also referred to Dr. Jones as a "former treating neurologist", and stated that "the record is devoid of any evidence of treatment by him after 2007". R. 20. The Magistrate Judge noted that the ALJ had erred in this specific respect, in that the medical record demonstrated that on one occasion in September 2008 Plaintiff saw Jones to follow up after a seizure.

anxiety and intermittent explosive disorder. He recommends an appeal of her disability denial. Dr. Jones' extensive treatment of Plaintiff, including a September 2008 visit, establishes Dr. Jones' thorough knowledge of Plaintiff's condition.

Pl.'s Objections to Report and Recommendation 4–5, ECF No. 23. The ALJ did not, however, dispute that Plaintiff suffered from seizures; she noted Dr. Jones' treatment notes and test findings (R. 15), and identified "seizure disorder" amongst Plaintiff's severe impairments. Instead, she rejected Dr. Jones' April 2009 residual functional capacity assessment:

> In April 2009, Dr. Jones, a former treating neurologist, reported that the claimant would be limited to sedentary work. However, he provided no objective support for his conclusions and the record is devoid of any evidence of treatment by him after 2007. His opinion is not well supported by the medical record, which shows that the claimant's seizures decreased dramatically when she was compliant with medication, therefore, it is entitled to little weight in this matter.

R. 20.

Despite Dr. Jones' status as a long-time treating physician, and the factual inaccuracy of the ALJ's statement that he had not treated Plaintiff after 2007, the ALJ did not err in rejecting his April 2009 opinion as not well supported. The medical evidence of record demonstrates that Plaintiff consulted with him for hypoglycemic episodes and seizures, which Jones eventually diagnosed as complex partial seizure disorder. R. 223, 190, 703. His treatment notes and outpatient patient reports demonstrate his examination and treatment of Plaintiff for her seizure symptoms. However, his medical source statement offered a wide variety of opinions about Plaintiff's physical capacity, including the necessity for her to maintain her right leg elevated to her waist level while sitting and to obtain rest during an eight-hour workday

for "shortness of breath". He limited her to only "occasional" ability to rotate and flex her neck or to reach her arms to shoulder height. R. 778–79. The Court cannot find, as Plaintiff insists, that Jones' opinions, especially on matters such as her range of motion which were not encompassed within any extant treatment records, were "clearly supported by the medical records and consistent with other evidence presented." Pl.'s Objections to Report and Recommendation 5, ECF No. 23. It will accordingly give deference to the Commissioner's determination and find that the ALJ did not err in the weight she gave to Dr. Jones' capacity opinion.

Dr. Daniel D. Hrinko. Plaintiff received, at the request of a state disability determination agency, two psychological evaluations. Dr. Daniel D. Hrinko, after interviewing her, concluded that Plaintiff's ability to relate with coworkers and supervisors was mildly impaired, but that her ability to understand and follow instructions based upon memory skills was markedly impaired. Notably, he stated that "[t]he frequency [with] which she had to be reminded about the topic of discussion was alarming." R. 156. Dr. Hrinko did not conduct any testing or other forms of objective evaluation. He assessed her with a Global Assessment of Functioning ("GAF") score of 65.[3]

Plaintiff was also assessed by Dr. Anthony M. Alfano. Dr. Alfano interviewed Plaintiff, finding no signs of disorientation, confusion, or lack of awareness. He then administered the WAIS-III intelligence test and the Weschler Memory Scale-III. The

---

[3] GAF is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). It is "not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x. 618, 684 (6th Cir. 2011).

WAIS-III yielded scores at the "extreme high end of the borderline range of intellectual functioning", though Dr. Alfano opined that "the borderline intellectual functioning range is probably a low estimate of her IQ, in that she is almost at the low average range of mental ability." R. 186. The Weschler memory test yielded memory index scores within two standard deviations below the mean, with a high working memory score. *Id*. Dr. Alfano concluded that Plaintiff was "probably not impaired" in her ability to understand, remember, and follow instructions, and that she had the mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks. R. 187. He assessed her with a GAF score of 55.

The ALJ concluded that Dr. Hrinko's opinion was "afforded little weight", as he "provided no clinical findings to support" his conclusion of marked impairment, and "it is inconsistent with his assessment of a GAF score of 65." R. 18. In her Statement of Errors, and upon objection here, Plaintiff argues that the ALJ failed to adequately explain why she gave Dr. Hrinko's opinion little weight. She states that Dr. Alfano, with his finding of borderline intellectual functioning and a GAF of 55, supported Dr. Hrinko's conclusion that Plaintiff's ability to follow directions was markedly impaired. Furthermore, she argues that it was incorrect for the ALJ to state that Hrinko provided no clinical findings, when Hrinko examined Plaintiff personally and based his opinion upon his clinical observations.

The ALJ did not err in affording little weight to Dr. Hrinko's opinions. Dr. Hrinko based his findings, as Plaintiff states, upon his observation of Plaintiff, especially what he found to be her "alarming" memory impairment. Dr. Alfano also interviewed and observed Plaintiff, concluding that she was "alert" and "quite responsive". R. 185. In

addition, however, he conducted objective intelligence and memory testing, which yielded findings at odds with a finding of "marked" impairment of memory. While he did assess her GAF at 55 and formally diagnose her with borderline intellectual functioning, Dr. Alfano discounted his own finding by opining that it was "probably a low estimate" and that Plaintiff was almost at the low average range of mental ability. Dr. Alfano's conclusions therefore were materially at odds with Dr. Hrinko's significantly more pessimistic findings of marked mental impairment. Sufficient evidence existed for the ALJ to give weight to Dr. Alfano's diagnostic testing results rather than Dr. Hrinko's subjective impressions, and to, where their conclusions differ, find Dr. Alfano's better supported. The ALJ consequently did not err in failing to give weight to Dr. Hrinko's opinion of Plaintiff's mental limitations.

Plaintiff's diabetes. The medical record shows that Plaintiff has struggled with her diabetes for several years. A substantial body of data on this impairment exists, as she frequently consulted Nurse Rutan about her blood sugar levels, and went to the emergency room for diabetes-related problems on at least three occasions. Plaintiff has consistently portrayed her diabetes as uncontrolled. However, after reviewing the record, the ALJ concluded:

> The claimant's testimony that her diabetes mellitus has been uncontrolled since 2004 simply is not supported by the record. To the contrary, treatment notes consistently described her diabetes as "stable".

R. 21 (citations omitted). In her Statement of Errors, and in her objections here, Plaintiff states that although the medical evidence sometimes listed her condition as stable, a review of the entire record shows that "her condition can be described as nothing other than un-controlled." Pl.'s Objections to Report and Recommendation 6, ECF No. 23.

The Court specifically adopts the Magistrate Judge's conclusions on this issue:

> The Court notes in the first place that, as cited above, "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached . . . even if the court might have arrived at a different conclusion." *Valley v. Comm'r*, 427 F.3d 388, 391 (6th Cir. 2005), citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
>
> The ALJ cited to seven entries in Plaintiff's record of treatment with Angela Rutan, spanning the period from September 26, 2005 until August 2, 2007, which indicated that her diabetes was stable or improved. In her reply memorandum, Plaintiff cited to several other records, spanning the period from August 23, 2004 until June 23, 2008, which indicated that her diabetes was worse or uncontrolled. (Doc. 19 at 2.) The evidence in the record is, as Plaintiff states, "mixed in nature", and much exists to support a decision opposite that reached by the ALJ here. However, an underlying ALJ decision is reviewed only for substantial evidence and compliance with relevant legal standards. To say that "[s]ome records certainly show that her diabetes is under control" but that the record is mixed is essentially to say that, although substantial evidence exists to support the ALJ's findings, the claimant wants the Court to arrive at a different conclusion. This it is barred from doing. *Mullen, supra*. Adequate evidence exists to support the ALJ's conclusion that Plaintiff's diabetes was substantially under control to the extent that it was not a severe impairment under Social Security regulations, and, under the standard of review the Court must apply, the Commissioner's findings were therefore conclusive. Finally, the Court does not find that the ALJ selectively cited to the record to support her conclusions, but rather that her decision was based upon the record as a whole.

Report and Recommendation 23–24, ECF No. 20. Plaintiff is correct that much evidence appears in the record to support a finding of uncontrolled diabetes. However, substantial evidence also appears which would support the ALJ's position. Accordingly, the decision of the Commissioner on this issue will be upheld.

<u>Claimant's efforts</u>. Lastly, Plaintiff notes:

> The Claimant's medical history has significantly deteriorated since her initial application. The ALJ concludes that many of the health issues associated with the Claimant have been brought on by her own bad behavior. However, the records show strong efforts by the Claimant to stop smoking, to lose

> weight, to adjust to the variety of medications and to manage her recurring and debilitating conditions, her blood sugar issue, her shortness of breath, her sleep apnea, even though moderate, her seizures, her heart disease and her marked problems with comprehension. Despite these efforts the Plaintiff's condition has continued to deteriorate. Accordingly, the ALJ should have determined that Plaintiff was disabled and entitled to benefits.

Pl.'s Objections to Report and Recommendation 6–7, ECF No. 23.

In her Statement of Errors, the Plaintiff argued that the ALJ engaged in an "attack" upon her "lifestyle choices", and that she exaggerated her obesity, smoking, and failure to consistently use her CPAP machine. The ALJ did note that "[t]he record is rife with noncompliance on the part of the claimant", citing evidence from the medical record of Plaintiff's failure to use the CPAP machine prescribed for her sleep apnea, decision to stop taking anti-convulsant medication, and continuing to smoke despite coronary and respiratory problems. R. 21. The Magistrate Judge found that the ALJ did not misrepresent the record with respect to Plaintiff's actions, and that Plaintiff had failed to explain why the ALJ's statement that her inactions had contributed to her medical problems was not based upon substantial evidence.

Plaintiff appears to be arguing here that the record shows strong efforts on her part to take steps to address her medical problems, and that, as her condition nevertheless continued to worsen, the ALJ erred in finding that she had "brought on" her own health problems by her "bad behavior".[4] As the Magistrate Judge found, however, the ALJ's citations to portions of the record demonstrating a lack of compliance with medical treatment or advice were not inaccurate, and amount to substantial evidence supporting any "criticisms". Furthermore, the ALJ did not base her

---

[4] Plaintiff does not appear to challenge the ALJ's determination as to her credibility.

overall opinion upon a conclusion that Plaintiff had "brought on" her own health problems, but upon findings that the medical evidence of record did not support a determination that Plaintiff met or equaled a listed impairment. To the extent that the ALJ assessed the way in which Plaintiff's compliance or noncompliance might have contributed to her medical problems, her findings were based on substantial evidence.

Conclusion. Plaintiff has not identified any basis for overturning the Commissioner's decision. That decision must be upheld if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even if the evidence could support a contrary decision. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The ALJ did not err in failing to give controlling weight to the opinions of Nurse Rutan, Dr. Jones, or Dr. Hrinko, and her determinations as to the stability of Plaintiff's diabetes and her noncompliance with medical treatment were based upon substantial evidence. Accordingly, the Report and Recommendation of the Magistrate Judge (ECF No. 20) is **ADOPTED**. The final determination of the Commissioner of Social Security is **SUSTAINED**. This matter is furthermore **DISMISSED**.

IT IS SO ORDERED.

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT